Thank you. Good morning, everyone. We're, Judge Jordan and Nygaard and myself are very happy to be presiding here in Pittsburgh. We have a number of interesting cases, the first of which is Roe v. Doe, but we understand that we're going to use the correct names for the parties. That would be Nationwide v. Hamilton. Is that correct? That's correct. Thank you. Mr. Gilbertson. May it please the Court, I'm Ralph Gilbertson. I'm with Eric Kau and Catherine Hoffman representing Nationwide Mutual Fire Insurance Company, the appellant. We request five minutes for rebuttal. Yes, sir. The only issue presented here is whether Nationwide is entitled to an arbitration that it contracted for in a 1992 agreement containing an arbitration clause. The district court overlooked the unflagging obligation to exercise jurisdiction and also found collateral estoppel based on a ruling in an action to which Nationwide was not a party and where no one was designated as a representative. May I ask you a preliminary question? I was a little puzzled by the procedure that the district court used. That is, considering collateral estoppel and then considering abstention. Are you okay with that or do you have any trouble with the manner in which the district court heard the issues? Well, I don't think I do, Your Honor, based upon the fact that the court interrupted the proceedings and asked for us to do something about it. We petitioned and the objection was raised by motion. Excuse me. There was a Rule 12 motion. We do object as to whether a Rule 12 motion was appropriate on a matter of a motion to compel arbitration. That part we would object to, that that's a proper procedure. Once you're beyond that, we had briefed the issue of the Colorado River Doctrine and the Moses Cone application. The district court, on its own motion, brought up the issue of privity and gave us the opportunity to brief them at that point. I thought it made more sense to address the abstention issue first before considering collateral estoppel, but that was the district court's choice according to your recollection. That's correct. It was the district court's choice. All right. Do you think we can consider abstention first here? Can you address abstention first? I would be happy to. I think the point is simple, and that is that there is an unflagging obligation to exercise jurisdiction. This court in Ryan indicated that it is axiomatic that it is unflagging. There is an extraordinarily narrow exception, and it is only under exceptional circumstances that there should not be the exercise of jurisdiction. Which of the six factors in the extraordinary circumstances test would you say has not been met here, Mr. Gilbertson? I think since we're looking at basically the last four factors, none of them have been met. The most important, as referred to in Cohn and in Ryan, being the issue of piecemeal litigation. In Colorado, there was the McCarran Act issue that dictated that there should not be piecemeal litigation. Here, both in Cohn and in Ryan, it's indicated that the Federal Arbitration Act actually provides for piecemeal litigation and determines that's more important here. It is referred to as the paramount factor and the most important factor. Let me ask you this. If a consideration of the arbitration clause is going to be necessary for the court of common pleas to actually adjudicate Hamilton's cross-claim, why shouldn't we look at that as being a parallel proceeding that's really going to address the very same thing that you want to address here? I think that preliminary question of parallel proceeding, separate in effect from these factors,  and as established in the record by George Hamilton, is not going to be before the state court. Because? Because the court, according to Hamilton, we don't exactly agree with it, but the court, according to Hamilton, has indicated that there cannot be any motions brought until after the close of discovery, which was going to be in June and is now going to be in November. So that the issue of arbitration will not be brought up until after the close of discovery. The issue of arbitration is the same issue regarding PMA as it is with nationwide, is it not? It is, Your Honor. So the issues are the same, the parties functionally I think would be the same. Why aren't the cases parallel? I think they're not parallel because the issue is not currently before that court. It is an issue of are they parallel at this time, and they are not parallel at this time. Well, but the issue is are you subject to arbitration? And the state court said no because Hamilton has withdrawn from the agreement. And they have withdrawn from the agreement as to PMA and as to you nationwide. So what is going to be the difference? I think the difference is the parallelism is that that only applies to us. That only matters here today if, in fact, there is privity. Because we are not a party to that action. We are in a consolidated, excuse me, a coordinated action, but not a consolidated action. We are not a party to that proceeding. You're in an identical party, but the interests are the same, aren't they? The interests are the same, Your Honor. But isn't that sufficient to find that the matters are parallel proceedings? To find them as parallel proceedings may be sufficient, but that is the preliminary issue before we get to the factors. I think the real issues here regard the application of the factors. So if the matters are not parallel, then we don't get into the Colorado River factor. I believe that's correct, Your Honor. If I can take you over to the collateral stopper for just a minute, if that's all right, my colleague. What is it that would make it, in your view, unfair or inappropriate for us to view, as the district court did, your position as being fully and adequately represented by PMA in its litigation? I think it's the application of the Restatement Second of the Law of Judgments, Section 41, which was adopted in Pennsylvania in Sicca v. City of Pennsylvania, City of Philadelphia, and used by this court in Collins, albeit under an application of New Jersey law, and in Hitchens v. Montgomery County, albeit in an unpublished opinion that found New Jersey law and Pennsylvania law to be the same. That the representational issue is that someone has to be, in order for you to be bound by someone else, they have to be representing you and designated to do so. It can't simply be that they are there on a similar interest. They actually have to acknowledge and be your representative and have been appointed as your representative. Well, was there a difference in the interest at the time it was being litigated to? There was a difference at the time because we did not have that interest at the time. Should that be important to us? It should be because in May of 2007, even if we had been a party at the time to that action and not what eventually became the action we were involved in, the coordinated action, we didn't have an arbitrable interest at that time because it wasn't until four months later that Nationwide was tendered cases again after a ten-year absence, after Nationwide exhausted in 1997. Speaking of an arbitrable interest, if Hamilton has withdrawn in accordance with the agreement, and the agreement says that the withdrawal of a party in effect renders the agreement no longer enforceable, that includes an arbitration clause, what does that do for your case? What has left you to arbitrate? Well, that issue was never argued or presented, but I think the answer is that arbitration clauses under the Federal Arbitration Act are valid, enforceable, and irrevocable. And so that the simple withdrawal... But how is it enforceable if the agreement says if anyone withdraws on notice, the agreement is no longer enforceable? Based upon the strength of the Federal Arbitration Act, Your Honor, and that issue has never been presented or argued. I think the point is that you have to establish separately a way out of the entire agreement. Wait a minute. So that even though you agreed in writing that there would no longer be arbitration if somebody withdraws, you say that under the APA you still have a right to arbitrate? We do, Your Honor. Our agreement was completed in 1997. It was over as far as we were concerned when we were given a release and discharge acknowledged by George Hamilton Company. That avoids the question, though, doesn't it, Mr. Gilbertson? I mean, the point that's being pressed here is, are you seriously taking the position that sophisticated parties cannot freely contract to give up arbitration rights? I think they can, not contrary to the Federal Arbitration Act, unless they specifically say they are giving up a right under the Federal Arbitration Act. What in the Federal Arbitration Act says that parties cannot create a contract in which arbitration rights are subject to termination? I think it is in Section 2 that it is valid and irrevocable and enforceable. And one last question. Is the question of whether you can arbitrate for the arbitrator or for the state court? Whether we can arbitrate is for the – actually, it's for this court, Your Honor. I think the issue of whether there is a… Arbitrable issue? Arbitrable issue. Okay. Thank you. Thank you. Mr. Gilbertson, Mr. Francis. Your Honors, my name is Frederick J. Francis from the law firm of Myron, Quebec & Scott, and we represent the appellee, George B. Hamilton, in this case. The instant case, before I get into my argument, I should mention that when we filed our motion to dismiss in this case, we based them entirely upon abstention because we thought that the issue of collateral estoppel was more on the merits and should be decided once the court refused abstention. So it was up to the lower court to raise collateral estoppel. So your strong point here is that the district court had to abstain. Yes, Your Honor. And we see no reason to get into the collateral estoppel issue until the abstention issue is ruled upon. Well, do you assert that there's privity of interest between PMA and Nationwide? We do, Your Honor. And how can there be privity when at the time PMA was litigating, your client had said in writing, Nationwide's off the hook? We don't think that we said Nationwide was off the hook. I think what we said was that Nationwide's products aggregate had expired. And, of course, we're not pursuing the products aggregate in Nationwide right now. Well, what does it mean? What's the practical effect of the May 5, 1997 assertion by your client that it was, quote, willing to accept the evidence of exhaustion, unquote, supplied by Nationwide? Isn't that a way of saying Nationwide's off the hook? It is. Nationwide is off the hook for products coverage. The coverage we're asserting right now is premises coverage. All right. Well, do you not see a pretty dramatic difference between Nationwide's posture then and PMA's posture at the time PMA was litigating? In what sense, Your Honor? Well, in the sense that your client had said in a way that Nationwide could perhaps reasonably have interpreted as a concession or an agreement that, okay, Nationwide's done. Nationwide was done as far as products coverage is concerned, Your Honor. And had anything been said to Nationwide to imply in any way, you're done with products, but we're coming back after you in a little bit about premises. The record reflects no communication of that sort. So my question to you is, since there has to be effectively an identity of interest in the litigation to get past that step of a privity analysis, is it fair to say that Nationwide and PMA were in the same posture when Nationwide could arguably, in fact, really reasonably have thought we're done? No, Your Honor, because the interim agreement provides that it doesn't change any of the policy provisions whatsoever. So if they wanted the issue of premises coverage was never raised, nor could it be raised under the interim agreement. It was restricted to products coverage, and the interim agreement so provides. Premises coverage, as Your Honor knows, arises when George B. Hamill doesn't sell the product, it installs the product, and thus the injury falls outside the parameters of the products hazard definition. Nationwide has said that it has completely exhausted the policy that you had with Nationwide, but your discovery apparently reveals that there is other coverage that is available. There's no premises coverage, Your Honor. Back in the days that we're talking about, in the 1980s, there was no aggregate for premises coverage. The only aggregate was for products coverage. Let me ask you to distinguish the Spring City case where, in opinion by Judge Sloviter, we found that abstention would indeed avoid piecemeal litigation, as you urge in this case, and where the state law rather than federal law controlled the issues, as you urge in this case. And the state court would adequately protect the interests of the parties, as you urge in this case. Even that was not enough to warrant the exceptional circumstances that are needed for abstention. So what additional factors are you urging on the exceptional circumstances issue for us to affirm the district court? Your Honor, I'm urging the fact that the issue was decided by Judge Wetter in 2007. And even though there could be issues raised as to whether that's collateral or estoppel. I'm addressing abstention. And let's say that the district court was addressing the abstention issue first. Yes, and I'm addressing abstention. Because one of the factors is which case was filed first and which case has progressed the farthest. And obviously, if Judge Wetter had decided the case, then the horse represented by the state court action has crossed the finish line. Of those really exceptional circumstances, who files first and how advanced the litigation is, given the importance of the federal courts exercising jurisdiction where the courts are supposed to exercise jurisdiction. Are those really important factors? The case of who files first, to me, is not an important factor. I think you have to look at the totality of the circumstances. And this case has been going on now for four and a half years. It has dozens of parties. Hundreds of thousands of documents have been produced in discovery. The case is nearly at an end. And to introduce arbitration now when Judge Wetter had ruled against arbitration two years ago, to me, is a waste of judicial economy. Well, isn't the whole premise behind Moses Cone and the Colorado River that judicial economy is not the prime good, that if there's an arbitration clause and it's valid, then we accept piecemeal litigation. That's part of the price and we embrace it. But I think you have to look at progress of the litigation under Colorado River. I mean, progress of the litigation was regarded as an important factor. Does that take us back to the issue of the fairness of imposing on Nationwide the progress of the litigation? I mean, does that throw us into a privity analysis and say, why should Nationwide have to deal with what other people litigated if they were not in privity? Well, let's put it this way, Your Honor. In September of 2007, Nationwide filed an answer, a new matter in the case, and one of their defenses was the arbitration clause. So they chose to defend in state court on the arbitration clause, and they could have gone forward and pressed that defense, and they chose not to. You're not suggesting, are you, that they should have foregone a valid defense in a place where they were sued so that they could press it here, are you? I mean, they're hauled into court in the state court. They don't have to give up defenses there just in order to assert what they think is right here, do they? Isn't that form shopping, Your Honor? If they raise the defense in state court, isn't that form shopping then to drop that defense, which they didn't do, they left it in the answer, and then go down to federal court because they know what Judge Wettick was going to do if they had chosen to proceed on that defense. They knew Wettick's blackboard. It's form shopping. Who chose the state court forum to put Nationwide in? Zorich, which was the party that brought Nationwide in on a crossfire. Well, it's an odd assertion then, isn't it, that they're form shopping when they're hailed into state court and they choose to come to this court? It's form shopping when they put down the arbitration clause as a defense and then don't pursue it in state court because I guess they found out about Judge Wettick's order. That arbitration clause, doesn't the agreement that you folks withdrew from require a 90-day notice in order for a withdrawal notice to all parties to be effective? I'd have to review the agreement on the notice provision, Your Honor. I don't have those facts at my fingertips. As a matter of fact, was there a 90-day notice given? No, there was not a 90-day notice given. So if there wasn't a 90-day notice given, would you agree that there's at least an issue as to the validity of the withdrawal from the arbitration? Yes, and of course that is a matter that should be taken up with Judge Wettick. Has PMA taken that issue up with the judge? I'm sorry, Your Honor? Has the other party, Pennsylvania Manufacturers, taken that issue up with the judge? It has not, Your Honor. It did not appeal Judge Wettick's order or take any further action in regard to the arbitration clause. Is that another reason to wonder whether PMA is adequately representing nationwide's interests? I don't think so, Your Honor. The fact that PMA chose not to appeal is a matter of a client choice perhaps or an issue as to whether appeal was a good idea. Maybe for them a good idea or not a good idea, but who are they to say it's a good idea or not a good idea for nationwide? From a collateral estoppel standpoint, Your Honor, but from a – you may be right, but from a progress in the litigation situation from a judicial economy, then the holes, if there are any, in collateral estoppel are filled by the factors in Colorado River. How can we separate that? You're making an argument that I'm having a little bit of trouble with, Mr. Francis, because you seem to be saying, look, this litigation has really progressed a long ways, even though I think you're rightly recognizing some tension because it may have progressed a long way, but it progressed a long way without nationwide. Nationwide wasn't in there making decisions about what to assert and not to assert. Nationwide wasn't in there saying, you know what, that whole business about whether they gave notice or not, I don't really care. I'm not appealing that. That wasn't their decision. That was somebody else's decision. So no matter how far that had progressed, is it fair to saddle nationwide with it? If nationwide had participated in the state court litigation, which it did very thoroughly from 2007 to the present date, nationwide at any time could have gone in to state court and attempted to change Judge Wettick's mind in regard to his decision in 2007. There may be holes in his decision, but nationwide never pursued that. As a part of the litigation, too, if nationwide could have appealed Judge Wettick's order to this court, you know, under interlocutory procedures, it failed to do so. In analyzing the Colorado River factors, how heavily should we put the thumb on the scale of arbitration in this case? Or should we not consider arbitration? The fact that what we're considering here is an agreement to arbitrate. Well, you're talking about what it seems to me that all of the Colorado River factors favor George B. Hamilton. I have yet to hear a factor that nationwide cites correctly. Well, I cited to you a number of factors that we have already said do not amount to exceptional circumstances. You told me that there are additional exceptional circumstances, which have to do with the advancement of the state court case, as well as the priority of the file. And I'm asking you, in addition to those factors, all of those factors, should we not put the thumb heavily on the scale in favor of nationwide in light of this proceeding being a proceeding to enforce an arbitration agreement? Well, the fact, Your Honor, is that when every Colorado River factor is met in this case, that itself creates the exceptional circumstances. That's the test. If George B. Hamilton bats a four out of four among the factors that are relevant in this case, that itself is the exceptional circumstances. That's how they're measured. Before my time is up, Your Honor, last night I was doing additional research, and I came across a case which I would like to bring to the Court's attention. The name of the case is American Reliable Insurance Company v. Stillwell, cited at 212 F. Supp. 2nd. 621. It's from the Northern District of West Virginia. It was decided in 2002 by Judge Stamp. In that case, which is very similar to this case, the insurance company defended an action filed by its insured under an arbitration clause. Simultaneously, it filed an action in federal court to compel arbitration. The state court then decided the arbitration. At that time, the insurance company pressed the federal court arbitration, and Judge Stamp looked at that case, looked at the factors, and said, hey, the state court action is over with. Progress has been achieved in the state court action. It would be a waste of judicial economy to go in and re-litigate the matter in state court. And Judge Stamp then decided on the Colorado factors that this was a case of exceptional circumstances, and decided in the insurance company. What was the site of that case again, Mr. Francis? And while you're looking for that, tell me, was it a circumstance where it was where the party to the federal court action and the state court action was, as nationwide is in this case, asserting that, hey, I wasn't in the state court action when the decision was made? It does not have that issue in it, Your Honor. The site is 212 F. Sub. 2nd. 621. Thank you, Mr. Francis. Mr. Gilbertson? Thank you, Your Honor. Picking up on that point, there are five reasons why the American Reliable doesn't apply. First, it was a matter of a 14-month delay for one factor. Second of all, the arbitration issue was the center of the state court issue. The state court issue here is insurance coverage and not release. Furthermore, the court indicated that the entire litigation was disposed of in the state court so that there was nothing left for the federal court to be concerned with. Going back to the matter of progress in litigation, not only was Nationwide not involved until 2007, but there has not been any progress in this matter for that factor of the Colorado River or the cone matter on the issue of arbitration. Everything regarding arbitration and the right to arbitration has been done here in terms of the petition and the denial of the opposition to the petition. You were drawn into the case initially by a complaint filed in Philadelphia. Correct. And that case was then consolidated with proceedings in Pittsburgh? Coordinated, not consolidated. Coordinated. But before the case was coordinated, the state judge had already made the decision regarding the arbitration issue? No, it had been coordinated before the judge made his decision, which was May of 2007. The coordination order was in 2006. We were not served. The filing of the third-party complaint didn't occur until June of 2007, and we actually answered and appeared in August of 2007. All right, but by June 2007, the state court had already decided the arbitration question? That's correct. And I think the issue regarding why didn't we do something when we joined in August of 2007, it's correct. We pled, although the only thing that had been pled against us was a third-party complaint by a non-party to the arbitration agreement, we raised the issue of arbitration as a matter of protection, so nobody could say that we waived it. All right, so you went back in court and you said that was a wrong decision? No. But we did not. I'm saying at the time in August, when we filed, we didn't have any idea of what had gone on, and we simply indicated as one of our affirmative defenses that we had an arbitration right. Okay, well, that's a couple years past now, Mr. Gilbertson. Mr. Francis says to us, wait, they haven't done anything in the state court to try to indicate their rights. They haven't said anything to the judge to say, hey, you know, you got that wrong, or we're in the case now and we want to talk about it. And they point to that as, I guess, an assertion that you don't want to talk to him because you know what you think, how he's going to rule, and you're in effect form shopping. What's your response to that? Well, at the time when we joined, where we could have appealed that issue, the short period of time that it could have been appealed, we didn't have an arbitration issue, an arbitrable issue. We were not an aggrieved party. That was in 2007, the fall of 2007. It wasn't until February of 2008 that a claim was made, a cross-claim was made by George Hamilton so that there was really an arbitrable issue. We then demanded arbitration from them. It was a month in succession. We demanded arbitration. They turned us down. We brought the claim here. The reason we brought the claim here is that it is to vindicate or to enforce a federal right. This is the place to come, to vindicate or enforce a federal right. I think the last issue simply regards the questions regarding the release and discharge. The release and discharge did not, and is correctly stated by Mr. Francis, the release and discharge does not deal with releasing or changing the insurance agreement or the terms of the insurance agreement. The release and discharge dealt with being released from all further asbestos claims. Policy remains as it is, but there is no longer a right by George Hamilton to submit claims under that policy because all future asbestos claims for whenever they have supplied asbestos has been released. It is correct that you do have a premises liability policy with Hamilton? It is correct. It's referred to as an operations section. This is an issue of either sale or installation, and there is aggregate coverage for products and separate coverage for premises or operations for install. Thank you, Mr. Gilbertson. Thank you. Thank you both for a well-presented case. We'll take the matters under advisement.